MORRIS C. MENGIS, Respondent, *v.* THE FIFTH AVENUE RAILWAY COMPANY and ALFREDERICK S. HATCH, Appellants, Impleaded, etc.

*Evidence of a written resolution of a corporation — if rejected, how the ruling is reviewed on appeal — proof of the substance of such resolution, not proper.*

Where a resolution of a corporation is in writing, if the corporation desires to offer it in evidence in an action in which it is a defendant, it should produce it, and if it is rejected should have it marked for identification and incorporated in the case on appeal, so that the court can determine upon the appeal whether it was competent.

Where an offer is made by the corporation to prove the substance of such a resolution, which is objected to, it is proper for the referee to rule that the offer is improper and that the corporation should offer the resolution and have it marked for identification, in case it be rejected.

APPEAL by the defendants, The Fifth Avenue Railway Company and another, from portions of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of February, 1894, upon the report of a referee, directing the transfer of certain bonds and the payment of certain moneys to the plaintiff.

In 1885 the Fifth Avenue Railway Company was incorporated under the laws of this State, with an authorized capital stock of $2,500,000, divided into shares of $100 each, for the purpose of constructing and operating a surface railroad in Fifth avenue and in other streets in the city of New York. A contract in writing was entered into between the plaintiff and the corporation on the 15th of September, 1885, which was modified by a written contract entered into between the parties October 30, 1885, by which the plaintiff agreed to construct the road of the corporation for $2,636,000 of its stock and $1,000,000 of its first mortgage bonds. The contract contains the following, among other provisions :

" That he (Morris C. Mengis) will promply proceed to obtain, at his own cost, all rights of way and necessary consents from the proper authorities and the property holders along the line of said railroad, and will in all respects comply with the legal requirements as to securing such rights and consents, and all provisions of law as to the building and completing of said road. * * *

" The party of the first part (Mengis) will, until the completion of said road, defray the current administrative expenses of said party of the second part (corporation) incident to its proper management, including salaries, office rent, employment of counsel, legal expenses, stationery, cost of printing securities, and all other ordinary expenses of such a corporation, but not exceeding in all the sum of twenty thousand dollars per annum. * * *

" While this contract shall remain in force the said party of the second part (corporation) will not issue, or agree to issue, to any person or persons or company, or for any purpose whatever, any stock or bonds or other securities in addition to the stock and bonds hereby agreed to be issued to the said party of the first part (Mengis), excepting the one hundred and forty shares of said capital stock now subscribed for, unless otherwise first agreed to by the party hereto of the first part (Mengis) in writing, and except that said party of the second part (corporation) may issue the five hundred shares of stock reserved in the treasury at any time after the payment of the first installment has been made to said party of the first part (Mengis) as herein provided, nor shall said capital stock be increased without the like consent of the said party of the first part (Mengis). * * *

" That in case said party of the first part (Mengis) shall fail to obtain the necessary rights, privileges and authority, and shall fail to build and complete said road within five years from the date hereof, then the said party of the second part (corporation) shall have the right and option to cancel this agreement, and thereupon both parties shall be absolved from any liability thereunder to one another. * * * "

The construction of the corporation's road has never been authorized, and no part of it has been built. The defendant Alfrederick S. Hatch has been a director of the corporation since its organization, and in September, 1885, the plaintiff entered into an agreement with him by which he agreed to act as trustee for the plaintiff. Shortly afterwards the plaintiff sold to various persons options to subscribe at par for a portion of the stock of the railway to which the plaintiff would become entitled under the terms of the contract. The sums received upon the sale of these options were

deposited by the plaintiff with the defendant Hatch, who was then a member of the banking firm of A. S. Hatch & Co. The defendant Hatch opened an account with the firm of A. S. Hatch & Co. in the name of " A. S. Hatch, in trust for M. C. Mengis." Between September 15, 1885, and November 17, 1885, the plaintiff received from the sale of privileges for the purchase of shares $10,950, which he turned over to Hatch, who deposited it to the credit of said account.

In October, 1885, the plaintiff authorized Hatch to pay to the corporation $5,000 and charge it to the said account, which was paid October 8, 1885.

On the 17th of November, 1885, the plaintiff authorized the corporation to sell the right to purchase such shares as he might become entitled to, at the rate of ten dollars per share, and deposit the sums received with defendant Hatch. Acting upon this authority the corporation sold the right to subscribe for a certain number of shares, realizing $13,320, which was credited to the trust account, thus making the total sum credited to said account and arising from the sale of privileges $24,270. From this sum Hatch paid to the plaintiff $13,760, leaving $10,510 to the credit of the account. February 6, 1886, Hatch, as trustee, by the authority of the plaintiff, paid to the corporation from said account $5,000, and February 8, 1886, a further sum of $5,000, leaving still to the credit of the account $510. On the 28th of June, 1886, Hatch, who was then treasurer of the defendant, purchased, with the money so received from the plaintiff, nine bonds of the par value of $1,000 each, for which he paid $9,993.75, and had them registered in the names of himself and of defendant William H. Lee, as trustees, which left in the hands of the defendant Hatch $6.25. Hatch received the interest paid on the bonds from time to time, amounting to $810, which, with the $6.25, stood to the credit of the corporation with the firm of A. S. Hatch & Co.

In 1887 the defendant Hatch made an assignment for the benefit of his creditors, but prior to the execution thereof he transferred said nine bonds to Isaac B. Newcombe and William H. Lee, in whose names they were registered as trustees. Between January 1 and April 23, 1890, Newcombe and Lee sold three of the bonds and paid the proceeds arising from the sale to the corporation. There-

after, and before the trial of this action, Newcombe and Lee received interest upon the bonds, amounting to $1,980, of which they paid $1,107.69 to the corporation, leaving in their hands $872.31. For a long time before this action was begun the plaintiff and the corporation have treated the construction agreement as abandoned.

This action was brought to recover the bonds held by the trustees, Newcombe and Lee, the $872.31 in their hands, the $510 in the hands of Hatch, and the amount in the hands of the corporation. By the first clause in the judgment the defendants Newcombe and Lee are ordered to assign six of the mortgage bonds to the plaintiff. By the second clause in the judgment the defendants Newcombe and Lee are ordered to pay to the plaintiff $872.31, and all other sums which they may have received as interest on the bonds after deducting the costs in this action of May, Lee and Newcombe. By the third clause the plaintiff recovers of Hatch $510, and by the fourth clause he recovers of the corporation $816.25.

*James J. Allen,* for the appellants.

*Lewis L. Delafield,* for the respondent.

FOLLETT, J. :

The corporation appeals from the first, second and fourth clauses of the judgment, and Alfrederick S. Hatch from the third clause thereof. No other defendant appeals. The corporation urges that the judgment against it is not " consistent with the case made by the complaint, and embraced within the issue," as required by section 1207 of the Code of Civil Procedure. The construction contract of September 15, 1885, the contract amendatory thereof of October 30, 1885, and the contract of November 17, 1885, by which the corporation was authorized and undertook to sell options to purchase shares which the plaintiff was to become entitled to receive under his contract, are set forth in the complaint. It is also alleged that the corporation sold options to purchase many shares of stock, and received a large sum of money in cash, which was paid over to Lewis May and Alfrederick S. Hatch, pursuant to the terms of the contract of November 17, 1885, which fund was subsequently transferred to Lee and Newcombe, who were directors of the corporation. It is also alleged that the plaintiff is ignorant of the amount

received for options so sold, and that all of the defendants are liable to account for and pay to the plaintiff the moneys received by them. The corporation alleges in its answer that it was agreed that the construction contract was not to be delivered to the plaintiff until $10,000 were paid over to it to be expended in payment of the administrative expenses referred to in the contract, but that afterwards, on the 8th of October, 1885, a resolution was adopted by the directors of the corporation that the contract be delivered to the plaintiff upon the payment by him of $5,000 and on receiving an agreement from him that half of any money thereafter received for the sale of options should be paid to the treasurer of the corporation until $10,000 should have been fully paid. That thereafter plaintiff paid to the treasurer of the corporation $10,000 received from the sale of options. It also alleges that it has expended more than the sum of $10,000 in paying the expenses of administering the affairs of the corporation. Other defenses are set up which were not established before the referee and which need not be referred to. Upon the application of the plaintiff the corporation was required to furnish a bill of particulars of the sums which it had paid out in administering the affairs of the corporation, which it refused to serve, and, by an order of the court, was precluded from giving evidence of the various items expended. Under this state of the pleadings it seems very clear that the issue as to how much the corporation had received, and how much of the sum remained unexpended and in its hands or in the hands of its officers or of the trustees, was clearly presented, and that the recovery against it was consistent with the case made by the complaint and embraced within the issue. Besides, the evidence of the amount of money and bonds in the possession or under the control of the corporation was not objected to on the ground that it was not relevant to any issue raised by the pleadings. The only objection that evidence offered by the plaintiff was inadmissible under the pleadings relates to a violation by the corporation of its agreement not to sell shares without the consent of the plaintiff.

On the trial the corporation by its counsel offered to prove the substance of the resolution of its board of directors, adopted on the 12th of September, 1885. This was objected to by the plaintiff's counsel, and the referee ruled that the offer was improper and that

the defendant should offer the resolution and have it marked for identification in case it was rejected. The resolution was not produced, and the referee was quite right in refusing to rule upon the offer. The resolution was concededly in writing, and if the defendant desired to offer it in evidence it should have produced it, and, if rejected, should have had it marked for identification, and incorporated in the case so that the appellate court could determine whether it was competent.

By the sixteenth finding it is found that the $5,000 paid by Hatch from the trust account to the treasurer of the corporation was for the sole purpose of securing the payment by the plaintiff of the administrative and other expenses which he was required to pay by the terms of his contract. It is urged that this finding is contrary to the weight of evidence. Over this issue there was a sharp conflict in the evidence, and we think that the finding of the referee is amply sustained by the testimony and that the finding that this sum was paid to the corporation as a bonus for awarding the contract to the plaintiff has little support in the evidence. The sixteenth finding being well founded, the fifth conclusion of law, that such part of the $5,000 as was not expended by the corporation in the payment of administrative expenses belongs to the plaintiff, necessarily follows. The referee found (third finding of fact) that it was provided by the construction agreement that should the plaintiff fail to build the road within five years the corporation should have the right to cancel the contract, and thereupon both parties should be absolved from any liability thereunder to each other, and he also found that for some years both parties to the contract had treated the construction agreement as abandoned. It is urged that these findings are destructive of the right of the plaintiff to require the corporation to account for sums of money which it had received from him, but had not expended, pursuant to the terms under which they were received. This provision relates to the executory parts of the construction contract, and not to moneys received by the corporation under the contract of November 17, 1885. There is no provision in the contract that, in case the plaintiff paid into the hands of the corporation a larger sum than was necessary for the payment of administrative expenses, he should forfeit it in case the construction of the road should become impossible by reason of the refusal of the authorities

of the city to grant permission for its construction, and there is nothing in these findings inconsistent with the right to recover from the corporation the sums of money which he had paid over to it and which it had not expended pursuant to the contracts.

The appeal on the part of Hatch is based upon the refusal of the referee to find that he had rendered services to the plaintiff equal in value to the sum ($510) retained by him, and for which a judgment was recovered. The referee found that the plaintiff agreed to pay Hatch a reasonable compensation for his services as trustee, but that the reasonable value of such services, over and above the value of an option given by the plaintiff to Hatch, did not appear from the evidence. Hatch ceased to be a trustee in 1887, and we think that the refusal of the referee to find that the services rendered by him previous to that date were of greater value than the option given him, and the profits derived from the use of the deposits in his hands and in the hands of the firm, was justified by the evidence.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.